JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Melissa Voter

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Susan R. Gross, Esq.
Law Offices Bernard M. Gross PC
1500 JFK Blvd., Suite 1910
Phila, PA 19102
215-561-3600

## DEFENDANTS

Shankar Musunuri, Ramesh Kumar, Kunge Zhang, Uday Kompella, Manish Potti, Kirsten Castillo, Prabhabathu Fernandes, Suha Taspolatoglu, and Sanjay Subramanian

County of Residence of First Listed Defendant   Chester County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | **IMMIGRATION** | |
| | | ☐ 555 Prison Condition | ☐ 462 Naturalization Application | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | |

*(SOCIAL SECURITY column:)* ☐ 861 HIA (1395ff)  ☐ 862 Black Lung (923)  ☐ 863 DIWC/DIWW (405(g))  ☐ 864 SSID Title XVI  ☐ 865 RSI (405(g))

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Section 10(b) of the Exchange Act, 15 U.S.C. 78(b), and Section 21D of the Exchange Act, 15 U.S.C., 78u-4(f)

Brief description of cause:
Verified Shareholder Derivative Complaint for violations of the Exchange Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   C. DARNELL JONES, II

DOCKET NUMBER   2:21cv03876

DATE   9/22/21

SIGNATURE OF ATTORNEY OF RECORD   *Susan R. Gross*

FOR OFFICE USE ONLY

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: c/o Susan Gross, Law Offices Bernard M. Gross PC 1500 JFK Blvd., Suite 1910 Phila, PA 19102

Address of Defendant: 263 Great Valley Parkway, Malvern, PA 19355

Place of Accident, Incident or Transaction: Malvern, PA

**RELATED CASE, IF ANY:**

Case Number: 2:21cv03876     Judge: C. DARNELL JONES, II     Date Terminated:

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____    _____    60547
Attorney-at-Law / Pro Se Plaintiff     Attorney I.D. # (if applicable)

**CIVIL: (Place a √ in one category only)**

A. *Federal Question Cases:*
☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☑ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Susan R. Gross , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 9/22/21     _____    60547
Attorney-at-Law / Pro Se Plaintiff     Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Melissa Voter                                           :                    CIVIL ACTION
                                                        :
                          v.                            :
Shankar Musunuri, Ramesh Kumar, Junge Zhang, Uday       :
Kompella, Manish Potti, Kirsten Castillo, Prabhabathu   :
Fernandes, Suha Taspolatoglu, and Sanjay Subramanian    :                    NO.
and                                                     :
Ocugen, Inc.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                            ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                        (x)

(f) Standard Management – Cases that do not fall into any one of the other tracks.            ( )

| 9/22/21 | SUSAN R. GROSS | _Susan R Gross_ |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for**   Plaintiff |
| 215-561-3600 | 215-561-3000 | susang@bernardmgross.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02


American LegalNet, Inc.
www.FormsWorkFlow.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MELISSA VOTER, Derivatively on Behalf of OCUGEN, INC., | Index No: |
| Plaintiff, | **VERIFIED SHAREHOLDER** |
| | **DERIVATIVE COMPLAINT** |
| vs. | |
| | |
| SHANKAR MUSUNURI, RAMESH KUMAR, JUNGE ZHANG, UDAY KOMPELLA, MANISH POTTI, KIRSTEN CASTILLO, PRABHABATHU FERNANDES, SUHA TASPOLATOGLU, AND SANJAY SUBRAMANIAN, | **DEMAND FOR JURY TRIAL** |
| Defendants, | |
| and, | |
| OCUGEN, INC., | |
| Nominal Defendant. | |

Plaintiff Melissa Voter ("Plaintiff"), by and through her undersigned counsel, derivatively

on behalf of Nominal Defendant Ocugen, Inc. ("Ocugen" or the "Company"), submits this Verified

Shareholder Derivative Complaint (the "Complaint"). Plaintiff's allegations are based upon her

personal knowledge as to herself and her own acts, and upon information and belief, developed

from the investigation and analysis by Plaintiff's counsel, including a review of publicly available

information, including filings by Ocugen with the U.S. Securities and Exchange Commission

("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly

available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought in the right, and for the benefit, of Ocugen against its officers and directors (defined below) seeking to remedy Defendants' breach of fiduciary duties.

## JURSIDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Sections 10(b) of the Exchange Act.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

## PARTIES

**A.      Plaintiff**

4.      Plaintiff Melissa Voter is an owner of Ocugen stock during the time when the Company was issuing false and misleading statements to the market.  Plaintiff continues to hold shares of Ocugen stock to the present.

**B.      Nominal Defendant**

5.      Nominal Defendant Ocugen is a Delaware corporation with its principal executive offices located at 263 Great Valley Parkway, Malvern, Pennsylvania 19355.

**C.      Director Defendants**

2

6.      *Defendant Shankar Musunuri* ("Musunuri") was the Company's Chief Executive Officer ("CEO"), Chairman of the Board of Directors (the "Board"), and Co-Founder of the Company.  Defendant Musunuri has also served as the Co-Founder, CEO and Executive Chairman of the Board of Ocugen OpCo, Inc. ("OpCo"), a wholly owned subsidiary of Ocugen.

7.      *Defendant Ramesh Kumar* ("Kumar") has been a member of the Board since September 2019 and is the Chair of the Board's Audit Committee and a member of the Nominating and Corporate Governance Committee.  Defendant Kumar also serves as a director of OpCo.

8.      *Defendant Junge Zhang* ("Zhang") has served as a director of the Company since September 2019.  Defendant Zhang is a member of the Compensation Committee and Chairman of the Nominating and Corporate Governance Committee.  Defendant Zhang also has served as director of OpCo since May 2015.

9.      *Defendant Uday Kompella* ("Kompella") is a Co-Founder of the Company and has served as a director since September 2019.  Defendant Kompella is a member of the Nominating and Corporate Governance Committee.  Defendant Kompella is a Co-Founder and member of the board of directors since September 2013 of OpCo, which he co-founded with Defendant Musunuri.

10.     *Defendant Manish Potti* ("Potti") has been a member of the Board since 2019. Defendant Potti is a member of the Board's Audit Committee.  Defendant Potti also serves as a member of the board of directors of OpCo.

11.     *Defendant Kirsten Castillo* ("Castillo") has been a member of the Board since 2020 and Chairman of the Compensation Committee.

12.     *Defendant Prabhavathi Fernandes* ("Fernandes") has been a member of the Board since 2020 and a member of the Compensation Committee.

13.     *Defendant Suba Taspolatoglu* ("Taspolatoglu") has been a member of the Board

since 2019 and a member of the Audit Committee. Defendant Taspolatoglu is also a member of the OpCo board of directors.

14.    Defendants Musunuri, Kumar, Zhang, Kompella, Potti, Castillo, Fernandes, and Taspolatoglu are herein referred to collectively as the "Director Defendants".

**Officer Defendant**

15.    ***Defendant Sanjay Subramanian*** ("Subramanian") was the Company's Chief Financial Officer ("CFO") and Principal Financial Officer at all relevant times.

16.    The Director Defendants and Defendant Subramanian are collectively referred to as the "Defendants".

## THE AUDIT COMMITTEE

17.    The Audit Committee assists the Board by providing oversight of the Company's financial management, independent auditor and accounting and financial reporting processes, as well as such other matters as directed by the Board or the Audit Committee Charter. Among other things, the Audit Committee's responsibilities include: (i) having sole discretion and direct responsibility for appointing, evaluating, retaining, compensating, overseeing, evaluating, and, when necessary, terminating our engagement with the Company's independent registered public accounting firm; (ii) discussing with management and the independent registered public accounting firm the Company's annual and quarterly financial statements and related disclosures and preapproving all audit services; (iii) establishing and overseeing compliance with the Company's procedures governing treatment of complaints concerning our accounting, internal accounting controls, or auditing matters, and submissions of confidential, anonymous, employee concerns regarding accounting or auditing matters; (iv) reviewing the Company's Code of Conduct and the Company's compliance with applicable legal requirements, as well as any litigation or

material government investigations, and making corresponding reports to the Board; (v) overseeing the Company's risk assessment and risk management processes and the guidelines and procedures to implement such processes; (vi) reviewing and ratifying all related person transactions, based on the standards set forth in our Related Person Transaction Policy; and (vii) preparing the Audit Committee report required to be included in our annual proxy statement.

**BACKGROUND**

18.    The Company is a clinical-stage and biopharmaceutical company which focuses on the developing gene therapies to cure blindness and developing a COVID-19 vaccine. The Company's main developments are a modifier gene therapy platform based on nuclear hormone receptors ("NHRs") to generate therapies for patient with inherited retinal diseases ("IRDs") and dry age-related macular degeneration ("AMD").

**FALSE AND MISLEADING STATEMENTS**

19.    On February 2, 2021, the Company issued a press release announcing an agreement with Bharat Biotech International Limited ("Bharat"), a biotechnology headquartered in Hyderabad, India.  Pursuant to the agreement, the Company obtained an exclusive right and license under certain of Bharat's intellectual property rights, with the right to grant sublicenses, to develop, manufacture and commercialize COVAXIN™, an advanced stage whole-virion inactivated vaccine candidate/product for the prevention of COVID-19 in humans in the United States of America (the "February Press Release").   In the press release, the Company stated:

> MALVERN, Pa. and HYDERABAD, India, Feb. 02, 2021 (GLOBE NEWSWIRE) -- Ocugen, Inc., (NASDAQ: OCGN), a biopharmaceutical company focused on discovering, developing, and commercializing gene therapies to cure blindness diseases and developing a vaccine to fight COVID-19, and Bharat Biotech, a global leader in vaccine innovation, today announced they have entered into a definitive agreement to co-develop, supply, and commercialize Bharat Biotech's COVAXIN™, an advanced stage whole-virion inactivated COVID-19 vaccine candidate, for the United States market.

> *Under the terms of the agreement, Ocugen will have US rights to the vaccine candidate and will be responsible for clinical development, regulatory approval (including EUA) and commercialization for the US market.* Bharat Biotech will supply initial doses to be used in the US upon Ocugen's receipt of an EUA. In addition, Bharat Biotech will support the technology transfer for manufacturing in the US. In consideration for the exclusive license to the US market, Ocugen will share the profits from the sale of COVAXIN™ in the US market with Bharat Biotech, with Ocugen retaining 45% of the profits.  [Emphasis added].

20.     On this news, the Company's share price increased from a close of $1.81 per share of Company stock on February 1, 2021, to close at $3.26 per share on February 2, 2021, an increase of approximately 80.1%.

21.     On February 5, 2021, the Company filed a Form 8-K with the SEC (the "February Form 8-K").  Attached to the Form 8-K as exhibit 99.1 was an investor presentation regarding the Company's apparent new mission to "develop a vaccine to save lives from COVID- 19."  The presentation described in great detail the Covaxin vaccine characteristics, the "unmet need in the United States" and the Company's plan to develop and file an Emergency Use Authorization ("EUA") with the U.S. Food and Drug Administration ("FDA"):



22.     On March 19, 2021, the Company filed a Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended December 31, 2020 (the "2020 10-K"), which was signed and certified under the Sarbanes Oxley Act of 2002.  Therein, the Company stated:

6

**OUR STRATEGY**

Our product candidates have the potential to save lives from COVID-19 and cure blindness diseases. We are committed to developing these product candidates and bringing them to market to serve patients in multiple disease areas. Key elements of the strategy we employ to accomplish this objective include:

- Advancing our COVID-19 vaccine product candidate towards EUA and commercialization in the United States. We have initiated discussions with the FDA regarding the development of COVAXIN. COVAXIN has been granted approval for emergency use in India. A Phase 3 clinical trial is ongoing in India. COVAXIN demonstrated a vaccine efficacy of 81% in the first interim analysis of the Phase 3 clinical trial. *We intend to advance the development of COVAXIN towards EUA and ultimately BLA approval in the United States*.

\*\*\*

**COMPETITIVE STRENGTHS**

Our key competitive strengths include:

- Vaccine Expertise. Key members of our management team and key advisors possess proven expertise and a track record of success in vaccine development and commercialization. We have established a vaccine scientific advisory board composed of leading academic and industry experts with extensive experience in the vaccine field. *We intend to utilize this collective experience to evaluate the clinical and regulatory path to EUA and commercialization of COVAXIN in the United States*. [Emphasis added].

23.     The statements in paragraphs ¶¶ 19-22 above were false and/or misleading as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. These statements were false and/or misleading statements and/or failed to disclose that: (i) the information submitted to the FDA was insufficient to support an EUA, (ii) the Company would not file an Emergency Use Authorization with the FDA, (iii) as a result of the foregoing, the Company's financial statements, as well as the statements about the Company's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**THE TRUTH EMERGES**

24.     On June 10, 2021, the Company issued a press release announcing that it would

7

pursue a "biologics license application" ("BLA") with the FDA instead of the previously announced EUA (the "June 2021 Press Release").  The press release stated:

Ocugen to pursue a BLA path in the US for its COVID-19 vaccine candidate

- *Company intends to work with the FDA towards filing a Biologics License Application (BLA) in the US*

- *Company to engage with Health Canada to seek authorization under Interim Order for use in Canada*

MALVERN, PA, June 10, 2021 — Ocugen, Inc. (NASDAQ: OCGN) (Company), a biopharmaceutical company focused on discovering, developing, and commercializing gene therapies to cure blindness diseases and developing a vaccine to save lives from COVID-19, today announced that upon recommendation from the U.S. Food and Drug Administration (FDA), it will pursue submission of a biologics license application (BLA) for its COVID-19 vaccine candidate, COVAXIN™. The Company will no longer pursue an Emergency Use Authorization (EUA) for COVAXIN™.

***The FDA provided feedback to Ocugen regarding the Master File the Company had previously submitted and recommended that Ocugen pursue a BLA submission instead of an EUA application for its vaccine candidate and requested additional information and data. Ocugen is in discussions with the FDA to understand the additional information required to support a BLA submission. The Company anticipates that data from an additional clinical trial will be required to support the submission.***

"Although we were close to finalizing our EUA application for submission, we received a recommendation from the FDA to pursue a BLA path. While this will extend our timelines, we are committed to bringing COVAXIN™ to the US. This differentiated vaccine is a critical tool to include in our national arsenal given its potential to address the SARS-CoV-2 variants, including the delta variant, and given the unknowns about what will be needed to protect US population in the long term," said Dr. Shankar Musunuri, Chairman of the Board, Chief Executive Officer, and Co-founder of Ocugen. Ocugen recently announced that it secured exclusive rights to commercialize COVAXIN™ in Canada and has initiated discussions with Health Canada for regulatory approval. The Company will pursue expedited authorization for COVAXIN™ under the Interim Order Respecting the Importation, Sale and Advertising of Drugs for Use in Relation to COVID-19 in Canada.

"In clinical trials to date, the emerging safety profile of COVAXIN™ is supportive of it being generally well tolerated with a good safety profile, with Ministry of Health and Family Welfare of Republic of India reporting no potential

8

thromboembolic events following the administration of over 6.7 million doses of COVAXIN™ in that country," said Dr. Bruce Forrest, Acting Chief Medical Officer and member of the vaccine scientific advisory board of Ocugen. [Emphasis added].

25.     On the release of the news, the Company's share price declined from $9.31 per share of the Company stock on June 9, 2021, to close at $6.69 per share on June 10, 2021, a drop of approximately -28.14 percent.

## DAMAGES TO THE COMPANY

26.     As a direct and proximate result of Defendants' conduct, the Company has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

- Legal fees incurred in connection with the Securities Class Action (defined below);

- Any funds paid to settle the Securities Class Action; and

- Costs incurred from compensation and benefits paid to the defendants who have breached their fiduciary duties to the Company.

27.     In addition, the Company's business, goodwill, and reputation with regulators and shareholders have been gravely impaired.  The credibility and motives of management are now in serious doubt.

28.     The actions complained of herein have damaged the Company's corporate image and goodwill. For at least the foreseeable future, the Company will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in misleading the investing public, such that the Company's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

29.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the

9

breaches of fiduciary duties by Defendants.

30.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

31.     Plaintiff is a current owner of Ocugen and has continuously been the owner of the Ocugen stock during all times relevant to the illegal and wrongful course of conduct alleged herein. Plaintiff understands her obligation to hold Ocugen stock throughout the duration of this action and is prepared to do so.

32.     During wrongful course of conduct at the Company, the Board consisted of Defendants Musunuri, Kumar, Zhang, Kompella, Potti, Castillo, Fernandes, and Taspolatoglu. Because of the facts set forth throughout this Complaint, demand on the Board to institute this action is not necessary because such a demand would have been a futile and useless act as discussed below.

33.     Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning its future prospects. Because of his advisory, executive, managerial, and directorial positions with the Company, Defendants had knowledge of material non-public information regarding the Company and was directly involved in the operations of the Company at the highest levels.

34.     Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

35.     Defendants cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for

reasons detailed elsewhere in this Complaint, Plaintiff has not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

36.      Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's unitholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

37.      Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to unitholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

38.      Because of their participation in the gross dereliction of fiduciary duties, and breaches of the duties of due care, good faith, and loyalty, Defendants are unable to comply with their fiduciary duties and prosecute this action.

## DEFENDANTS ARE NOT INDEPENDENT OR DISINTERESTED

### Defendant Musunuri

39.      Defendant Musunuri is the Chairman of the Board, CEO and a Co-Founder of the Company, and therefore is not independent under NASDAQ listing rules.  As CEO, Defendant Musunuri is an employee of the Company, and thus could not disinterestedly consider a demand for action that might require him to sue the directors that control his continued employment and/or fellow members of management with whom he works on a day-to-day basis.  Moreover, as alleged herein, Defendant Musunuri personally issued the misleading statements alleged herein and is

11

named as a defendant in the securities class action entitled *Nicanor v. Ocugen, Inc.*, et al., No. 21-cv-012725 (E.D. Pa.) (the "Securities Class Action"). As a result, Defendant Musunuri would be interested in a demand regarding his own wrongdoing and demand is futile as to him.

**Defendants Musunuri and Kompella**

40.    Musunuri and Kompella could not disinterestedly consider a demand because they co-founded the Company.

**Defendants Kumar, Potti, and Taspolatoglu**

41.    Defendants Kumar, Potti, and Taspolatoglu served as members of the Audit Committee at all relevant times. As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations. As alleged herein, Kumar, Potti, and Taspolatoglu failed to ensure the integrity of the Company's internal controls, allowing the materially misleading financial statements to be disseminated in the Company's SEC filings and other disclosures. Thus, Kumar, Potti, and Taspolatoglu breached their fiduciary duties and are not interested, and demand is excused as to them.

**Defendant Kumar**

42.    Kumar is also a member of the board of OpCo, a wholly-owned subsidiary of the Company along with Musunuri, and Kompella.

### COUNT I

### Against Defendants for Breach of Fiduciary Duties

43.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

44.    Defendants owe the Company fiduciary obligations. By reason of their fiduciary

relationships, Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

45.     Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

46.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages. As a result of the misconduct alleged herein, Defendants are liable to the Company.

47.     As a direct and proximate result of Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs associated with defending securities lawsuit, severe damage to the unit price of the Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

## COUNT II

### Against Defendants for Unjust Enrichment

48.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

49.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Defendants were unjustly enriched at the expense of, and to the detriment of, Ocugen.

50.     The Defendants either benefitted financially from the improper conduct, including from the receipt of bonuses, unit options, or similar compensation from the General Partner that was tied to the performance or artificially inflated valuation of Ocugen, or received compensation that was unjust in light of the Defendants' bad faith conduct.

51.     Plaintiff, as a stockholder and representative of Ocugen, seeks restitution from the Defendants and seeks an order from this Court disgorging all profits, including from benefits and other compensation, including any performance-based or valuation-based compensation, obtained by the Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

52.     Plaintiff, on behalf of Ocugen, has no adequate remedy at law.

## COUNT III

### Against Defendants for Abuse of Control

53.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

54.     Defendants' misconduct constituted an abuse of their ability to control and influence the Company.

55.     As a direct and proximate result of Defendants' abuse of control, the Company sustained significant damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

## COUNT IV

### Against Defendants for Waste of Corporate Assets

56.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

57.     As a result of the foregoing, and by failing to properly consider the interests of the Company and its public Unit holders, Defendants have caused Ocugen to waste valuable corporate assets, to incur many millions of dollars of legal liability and costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future

customers who no longer trust the Company and its products.

58.     As a result of the waste of corporate assets, Defendants are each liable to the Company.

59.     Plaintiff, on behalf of Ocugen, has no adequate remedy at law.

### COUNT V

#### (Against Defendants Musunuri and Subramanian for
#### Contribution for Violations of Sections 10(b) and 21D of the Exchange Act)

60.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61.     Defendants Musunuri and Subramanian are named as defendants in related securities class action. The conduct of these defendants, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

62.     The Company is named as a defendant in related Securities Class Action that alleges and asserts claims arising under § 10(b) of the Exchange Act.  The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.  If the Company is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

63.     As officers, directors and otherwise, Defendants Musunuri and Subramanian had the power or ability to, and did, control or influence, either directly or indirectly, the Company's

15

general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated § 10(b) of the Exchange Act and SEC Rule 10b-5.

64.     Defendants Musunuri and Subramanian are liable under § 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

65.     Defendants Musunuri and Subramanian have damaged the Company and are liable to the Company for contribution.

66.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment as follows:

A.     Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B.     Awarding, against Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of his fiduciary duties;

C.     Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

D.     Awarding Plaintiff judgment on each and every Count;

E.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: September 21, 2021

**LAW OFFICES OF BERNARD M. GROSS, P.C.**

By: */s/ Susan R. Gross*
    Susan M. Gross
Two Penn Center, Suite 1910
1500 John F. Kennedy Blvd
Philadelphia, PA 19102
Telephone: (215) 561-3600
Facsimile: (215) 561-3000
Email: susang@bernardmgross.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY  10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: egleston@gme-law.com

***Attorneys for Plaintiff***

## VERIFICATION

I, MELISSA VOTER, am a plaintiff in the within action. I have reviewed the allegations made in this Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this ___21___ day of September 2021

MELISSA VOTER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
|  | : | CIVIL ACTION |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           ( )

_____        _____        _____
**Date**                   **Attorney-at-law**        **Attorney for**

_____        _____        _____
**Telephone**              **FAX Number**             **E-Mail Address**

(Civ. 660) 10/02



**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)         The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)         In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)         The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)         Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)         Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

